Good morning, your honors. My name is Craig Orrent. I'm an assistant federal public defender from the District of Arizona, and I represent the petitioner Cecil Begay. I would submit to your honors that this is a striking example of why 18 U.S.C. 4241D should be deemed unconstitutional. Mr. Begay's case is extremely striking in the sense that he was a person who was found by the court, the federal court in Arizona, to not be a danger to the community, not to be a flight risk, and he was allowed to return to the Navajo reservation in his rural community and to live as he had been living prior to the charges being filed against him. But when the district court concluded that he was incompetent, it felt that it had no choice but to take him into custody and to commit him for restoration, treatment, and evaluation. Your argument is not that the statute doesn't say that. Your argument is the statute says it, but it's unconstitutional. Is that right? That's correct, your honor. I did raise another issue in the brief, and I'll only address it if your honors request that I do so, and that is there is the... Why is it unconstitutional? In that Zydweidas case, the Supreme Court went out of its way to say that what created the unconstitutionality was the indefiniteness, and it seemed to bless with approval the part of the statute that provided for a several months' commitment. Your honor mentioned the Zydweidas case, and I believe, and I think your honor was intending to refer to the Jackson case. No, I meant the Zydweidas case. I believe that case relates to aliens, but... That's right. Okay. That's right, but it's an analogous constitutional issue. That case is analogous. However, there are two distinctions. One is that they're dealing with aliens. Why does that distinguish it? Because the courts have held repeatedly, as has this court, in fact, that aliens are treated differently than statutes that address citizens. Okay. What's the other distinction? And the other distinction is that the issue before this court, I suggest, is whether or not it's appropriate to take someone into custody in the first instance, not whether, once they're in custody, the length of commitment is reasonable. Whether to even take them in? How do you tell if they're incompetent to stand trial without taking them into custody and examining them and letting it go on for a while so that the examination can continue? I agree with the court's implication, which is that committing somebody to an institution is one alternative way of determining whether someone is competent or not. But I would suggest, as I indicated in my brief, that the authorities are to the contrary, that it's not the only way of determining whether someone is competent. The states, which is the arena that is traditionally deals with mental health issues, have dealt with this issue. And if the court looks to the statutes, as I've cited in my brief in some of the cases, the states permit, if not require, outpatient treatment unless the circumstances are such that the court determines it's necessary to take the individual into custody. But first they have to determine. I mean, obviously, if you're going to take somebody in, if you're incompetent, you can never be prosecuted. And the underlying offense can be anything from very minimal to a very serious offense. And in this instance, it's a fairly serious offense as far as that goes. So if they're incompetent, then they never get prosecuted. And, you know, that's kind of the tradeoff. But the whole purpose is to get a better look at the individual to, you know, make a determination. Are they ever going to regain their competency? You know, what sort of treatment? Because obviously in this case, much to the surprise of everyone, they sent him back as competent. I mean, I think that everyone thought that because this individual has a number of problems, that he would never be found to be competent. And they've sent him back. Respectfully, we have not provided supplemental briefs, but the Butner officials did not necessarily find him competent. They found that he was, from a practical standpoint, incompetent, but did not satisfy the test of competency in a legal sense. The officials at Butner have determined that his lack of competency is the result of cultural issues. But isn't he back to court to have a hearing on whether he can be found competent for trial? I mean, they've returned him for that purpose, right? They have determined in their opinions that he's not legally incompetent. The physician that examined Mr. Begay reexamined him and is sticking by his position that he's incompetent. And as a result, the district court is going to hold a hearing. And as I cited in my brief, the district court is prohibited from relying solely on the doctor's opinions at FCI Butner by itself. It must make an independent judgment. Right. But the whole issue is legal competence. It's not competence otherwise. I mean, for our purposes here. I mean, because clearly this individual has a lot of, you know, has a lot of educational and mental deficiencies and a number of things, but that's not, but there's a specific standard for legal competence of whether you can be tried. And I think the point Your Honor is making can be looked at from a different angle. Our point is that he, Mr. Begay, could have been examined locally. And we had a physician that does this on a repeated basis for the State of Arizona who could have examined Mr. Begay locally and reached the same conclusion in theory that the people at Butner 3,000 miles away reached six months. But I thought you were conceding that the statute says that they have to be incarcerated for this. You're just claiming that it's unconstitutional. You're saying there's another way that you could do it. So that's kind of apples and oranges to me here. Here the statute says that's what they had to do, that's what the judge did. And then your argument of whether the statute can be constitutional to me seems to hinge on, as Judge Kleinfeld said, you know, it's like only up to 120 days here. I mean, there are institutional reasons why you can get a better look at someone while they're in custody. You can't keep them for the rest of your life. There's a sunset on it, and there are review in place. So I see it as, I'm not sure how, Zadavias or however you say that case's name, I think this can be distinguished by the virtue of the fact that it is a certain, it's a limited period of time that they can look at him. Well, our position, Your Honor, is that the statute, just because the statute says it should be done away doesn't mean it's the appropriate way to do it under the Constitution and precedent. And even if you were a judge and it has mandatory language, you're just saying the judge should not follow that? Of course not. I suggest that the district court should have found the statute unconstitutional, as I suggest their court should have. How could it? I'm looking at this language in Jackson v. Indiana where the U.S. Supreme Court says cannot be held more than the reasonable time necessary to determine whether there is a substantial probability that he will obtain that capacity in the foreseeable future. To me, that carries a negative pregnant, plainly implying that a person can be held for a reasonable time necessary to determine whether there is a substantial probability, even if he's incompetent to stand trial now, that he will be in the foreseeable future. And as far as I can tell, three other circuits have so held and no circuit has held your way. I don't see how we could do anything else. Your Honor, even the Jackson case itself at page 735 expressed doubt as to the presumption that the statute creates. At page 735, the Jackson court indicated that the initial commitment based on a premise that that's the only means of accomplishing the government's compelling interest of restoration is subject to doubt given the way mental institutions are today. And even the Filippi case that the government relies on. Let's see. What is the language at 735 that you're relying on? What does it say? Your Honor, give me one second. I don't have it. You can just paraphrase. You don't have to look it up. I'm not sure that I'm capable of doing that, Your Honor. I apologize. If I'm missing something about Jackson, I want to know it. Yes. The court wrote, related to these statistics are substantial doubts about whether the rationale for pretrial commitment that care or treatment will aid the accused in attaining competency is empirically valid given the state of most of our mental institutions. And, of course, subsequent to that, the states have passed statutes which permit outpatient treatment. That sounds like it just runs crosswise into what Judge Callahan pointed out, that in this case this fellow started out incompetent to stand trial and wound up competent to stand trial. I'm not sure I follow that. We dispute that he's competent. Well, maybe he didn't, but Butner is the Fed's leading institution for this sort of thing, and they thought he was competent to stand trial. And they have not been subject to a hearing yet or subject to cross-examination. Sure. Thank you, Your Honor. Thank you, counsel. Good morning. Joan Rufinock, appearing on behalf of the United States. Is it true that three circuits have gone your way? Yes. And are there any circuits that have gone the other way? No. I'd like to address the mootness issue, though, if I may. Well, I think that that's fine, but I don't, you know, it certainly seems like it's coming right back at us. He's not, even though the institution has returned him to court saying he's competent, there's still a hearing. And I think anyone that's had, you know, having been a former trial judge, people go in and out. I mean, it's not uncommon that in the middle of trial a lot of times things get suspended again and they get sent back. So, you know, while that may be a nice way to go, I could see it recurring in this particular trial and very easily. I can certainly agree that it's foreseeable that he would be resubmitted for a dangerousness evaluation. Yeah, but he's not really even competent to stand trial yet. He's been returned to the court to have a hearing. That's right. And that's a big difference than he's been found after a hearing. And I mean, at the hearing, is it a judge hearing, is it a jury hearing, or what's he entitled to? Before the judge. Before the judge for a determination of whether he is in fact competent. Right. But the judge is going to hear from the initial doctor, is going to hear from those facilities. And, you know, the judge may not feel that he's regained his competence. Or he could lose his competence again during the trial. I would just suggest to the court that in Friedman, in determining whether or not this court should take this type of issue interlocutorily, that the court relied on the Second Circuit case of Gold and quoted from the judge, the author of that opinion, in which they said they discussed whether or not there would be a mootness issue. And they found that if, in fact, someone were, in a case like Mr. Begay, found competent, and then convicted after trial, while the issue could be raised on appeal then, there was no remedy available to him to remedy the fact that he had been taken into custody for the evaluation, that the issue would become moot. Is Begay free now? Yes. He's out free? Yes. Not just out of Butner and in custody locally, but out free? To my knowledge, he's on the reservation as we speak. So I would submit that Friedman is, while it didn't hold or resolve the mootness issue, that it appears to suggest that mootness would be an appropriate consideration for this court. I think it's an appropriate consideration, but I think you lose. That's just my view. I don't know what anyone else's view is. With regard to the ---- But, see, Friedman, it was not a holding, right? That's correct. It was not a holding. It was just they quoted the language from the Gold case. And why isn't this, in that evading, likely subject to repetition but evading review category? Because of what Judge Callahan said, that a lot of these people go in and out? Because ---- I mean, this fellow is pretty marginal, it looks like. Absolutely. I agree that he is absolutely marginal. But at this point, Butner has found him competent. I once turned down a Butner recommendation when I was a district judge. They thought the guy was okay to be out. I didn't. But he's now out. So that's, I mean, that's the position that we've had. He's not adjudicated yet, right? That's correct. It's going to be sometime in the next couple weeks, from what I understand. With regard to the substantive issue of constitutionality, if the Court has no specific questions? I guess not. Thank you, counsel. Just a minute. Thank you. Any problem giving the appellant a minute to address mootness? No. We'd like to hear one minute from the appellant on mootness. Thank you, Your Honors. I believe the counsel for the government referred to the quote from Golden. And if my memory serves me, that quote relates to the situation where the defendant is convicted and then on appeal raises the issue. And the judge that wrote that statement indicated that at that point in time, the issue would be moot. And we would concede that that would be correct. The difference here is this is an interlocutory appeal. And the issue was presented to the Court in a timely fashion. And Mr. Begay took all necessary steps to try to expedite the review. And it was rejected. His request for a stay was rejected by this Court. And his request for expedited briefing was rejected by this Court. And I think it should be of note that the clerk of this Court, in the language that it used in rejecting the request for expedited briefing, indicated that this case could never be reviewed. This issue in this Court, if the clerk's statement is correct, will never, ever be addressed by this Court. Unless the people at Butner and the Federal District Court decide to keep the incompetent individual in custody for a year or so. Well, can't it start again? I mean, if he, let's say he's found competent, then during the trial it's suspended again. And can't he go off again for another 120 days? Yes, he can. It starts again, doesn't it? He can. And according to the interpretation or the reading of the statute, 4241, the District Court would have no choice but to send him back to Butner or to some Federal facility. Thank you, counsel. Thank you, Your Honor. United States v. Begay is submitted. We'll hear United States v. Williams. Thank you.
judges: Oakes, Kleinfeld, Callahan